# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **EXCEPTIONAL HEALTHCARE LLC,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | **CIVIL ACTION NO.** |
| ) | **1:24-CV-00388** |
| **EVIDENT, LLC and TRUBRIDGE,** ) | |
| **INC.,** ) | |
| ) | **JURY TRIAL DEMANDED** |
| **Defendants.** ) | |

## ORIGINAL COMPLAINT

Plaintiff, Exceptional Healthcare LLC ("Exceptional" or "Plaintiff"), complaining of the actions of Defendant Evident LLC ("Evident" or "Defendant"), and TruBridge, Inc. ("TruBridge") (successor by merger), and, for cause, would respectfully show this Court as follows:

## I.    PARTIES

1.    Exceptional is a Texas company with its principal office in Dallas, Texas.

2.    Evident is a Delaware limited liability company with its principal office located at 6600 Wall Street, Mobile, Alabama 36695. Evident has been doing business in the State of Alabama since 2015. See Exhibit A hereto.

1

3. TruBridge, Inc. is an Ohio corporation with its principal address located at 219 E. Maple Street, Suite 3000, North Canton, Ohio 44720. TruBridge, Inc. is licensed to do business in the State of Alabama. See Exhibit B hereto.

4. Pursuant to information on file with the Alabama Secretary of State, Evident was merged into TruBridge on February 29, 2024. Exhibit A.

## II. JURISDICTION AND VENUE

5. This Court has jurisdiction over this action in that the amount in controversy exceeds the monetary jurisdictional limits of this Court, is between parties from different states, and is pursuant to the terms of the parties' contract, paragraph 23 *Governing Law; Venue*, in which the parties agreed any litigation would be brought in this Court. Venue is proper in this Court in that Defendant resides in this district.

## III. FACTUAL BACKGROUND

6. Exceptional owns and operates multiple hospitals in the American Southwest, including in Yuma and Maricopa, Arizona. It also formerly owned and operated a hospital in Amarillo, Texas until it sold that facility in 2023.

7. On or around June 16, 2021, Exceptional entered into the "Cloud Electronic Health Record "EHR" Service Agreement" with Evident (the "Contract") wherein Evident agreed to provide Exceptional with access to and use of its EHR

technology record system for use in the Yuma, Maricopa and Amarillo facilities (the "Hospitals"). A true and correct copy of the Contract is attached as Exhibit C hereto.

      8.     Exceptional entered into the Contract with Evident in reliance on a myriad of representations made by Evident about its EHR system, including without limit that (1) Evident would provide immediate and adequate training to Exceptional's staff on the new system when in fact Evident had to be asked repeatedly for training and when provided, it was provided by people who were not adept at providing the training needed; (2) the system was an integrated system that would allow cross-access throughout the Hospitals by multiple disciplines when in fact the system was not integrated and staff had to completely exit parts of the system in order to access other parts, creating far more room for mistakes impacting patient care; (3) the system was state of the art and up to date when in fact the system could not record a myriad of information commonly required for patient care and/or by inspectors and did not interface with and/or record data from equipment used in patient care; (4) the system's interface was user friendly and would be easy for end-users like the Hospitals staff, to use, when in fact the system required users to exit out of one part of the system to access other parts, limited the information users could enter into the system, restricted access to certain information, failed to save information when recorded requiring it to be re-entered, and limited information sharing between departments and disciplines; and (5) the system had been

thoroughly tested and was free of technical defects when in fact the system had frequent failures and malfunctions. Based on Evident's representations, Exceptional entered into the Contract and agreed to pay Evident a service fee of $17,261 per facility per month for as long as an Addendum for each facility was in effect. On that same date, Exceptional and Evident entered into Addendums for the Maricopa and Amarillo Hospitals for terms of seven years. True and correct copies of the Maricopa and Amarillo Addendums are attached as Exhibits D and E hereto. The parties entered into an Addendum for the Yuma Hospital on September 13, 2021, also for a term of seven years, and a true and correct copy of that Addendum is attached as Exhibit F hereto.

9. On February 9, 2022, the parties entered into a Service Addendum to the Contract in which Evident agreed to provide the Hospitals with additional EHR services in exchange for $2,486 for each Hospital per month for the seven years. A true and correct copy of the Service Addendum is attached as Exhibit G hereto.

10. Over the next several months, Evident claimed to be performing the implementation of its EHR system at each of the Hospitals, which involved onboarding the Hospitals' medical records from prior systems to the new system, training, etc. While Exceptional was initially having some issues with Evident's EHR system, it assumed that the problems would subside once the implementation process was complete. By August of 2022, Evident claimed that all implementation

services were complete; yet, Exceptional was still experiencing significant problems with the EHR system.

11. Exceptional spent the next year attempting to get the myriad of technical issues with Evident's EHR system resolved, creating numerous "tickets" with Evident's IT department and trying various internal work-arounds at the Hospitals, but ultimately, the system simply does not function as promised.  A few examples of Evident's system's many faults include:  difficultly and/or inability to properly enter patient medication information, lack of connectivity and recording of information from patient monitoring equipment, inability to record certain patient statistics and information (e.g., fluid intake compared to urine output, bedsore charting, etc.), inability to timely access patient information, character limitations in data fields prevent critical patient information from being entered into charts, inability to make revisions in patient charts, and consent forms not recording signatures.  As a result, patient care was at risk and the staff at the Hospitals had to spend inordinately more time to obtain basic patient information because the EHR system does not function properly.  Therefore, in September of 2023, Exceptional declared Evident in breach and ceased payments under the Contract, as amended, and ceased using Evident's EHR system at the Hospitals.

12. As a result, Exceptional experienced loss of billings and loss of productivity, costing it funding.  Exceptional also had to undergo the expense of

securing another EHR system, implementing it at its Arizona Hospitals, and take on the liability of this potential loss when it sold its Amarillo Hospital.

13. For brief period of time in 2024, the parties attempted to resolve this dispute but were unable to do so. Exceptional therefore now sues to recover its losses.

### IV. CAUSES OF ACTION

#### COUNT ONE: Breach of Contract

14. Exceptional re-alleges the allegations contained in factual background paragraphs above.

15. The Contract, along with the Addendums identified herein, represent a valid and enforceable contract between Exceptional and Evident (collectively the "Complete Contract"). Exceptional has fully performed and complied with all of its contractual obligations under the Complete Contract or said contractual obligations have been waived or excused.

16. Evident has breached the Complete Contract by making false representations as described above and by failing to provide a properly functioning EHR system and related service to Exceptional as required under the Complete Contract. Exceptional has suffered substantial damages as a result of these breaches which it seeks to recover from Evident and TruBridge, as successor by merger.

## COUNT TWO:  Fraud

17. Exceptional re-alleges the allegations contained in factual background paragraphs above.

18. Exceptional asserts a claim for fraud as to the false representations outlined herein made by Evident.  The representations described above were made either with knowledge of their falsity or with reckless indifference to their falsity.

19. The false representations and omissions were made with the intent to induce Exceptional to enter into the Complete Contract, expend its time and other resources onboarding Evident's EHR system, and paying pursuant to the terms of the Complete Contract.

20. Exceptional reasonably relied on Evident's misrepresentations and omissions, and suffered damages as a result of the fraud, for which is now sues both Evident and Trubridge, as successor by merger.

## COUNT THREE: Fraud By Non-Disclosure

21. Exceptional re-alleges the allegations contained in factual background paragraphs above.

22. Evident's conduct also constitutes fraud by nondisclosure.  Evident failed to disclose a fact it had a duty to disclose.  Specifically, by not disclosing the many flaws with the EHR system, Evident concealed material information from Exceptional.  Evident knew that Exceptional did not have an equal opportunity to

discover the information Evident had, but Evident had a duty to speak since it was in the position to know about the flaws in its system.

23. Evident intended to create a false impression in the mind of Exceptional, specifically that EHR system would function as represented in Exceptional's Hospitals.

24. Evident did in fact create a false impression in the mind of Exceptional regarding the same.

25. Evident intended for Exceptional to take action, including entering into the Complete Contract, onboarding the EHR system at its Hospitals, and making the payments under the Complete Contract to Evident, which Exceptional would not have done had it known the true facts.

26. By failing to disclose such information, Evident intended and did in fact cause Exceptional to justifiably take actions as stated above. Exceptional would not have taken such action had it known the true facts. As a result of the foregoing, Exceptional has suffered damages for which it now sues both Evident and Trubridge, as successor by merger.

### COUNT FOUR: Negligent Misrepresentation

27. Exceptional re-alleges the allegations contained in factual background paragraphs above.

28. In the alternative and without waiver of the foregoing allegations, Exceptional will show that Evident was negligent and/or grossly negligent in its misrepresentations to the Exceptional, among other things, the functionality of the EHR system. Evident provided false information and/or failed to make statements necessary to clarify prior statements, for the guidance of Exceptional in its business, and Evident did not exercise reasonable care or competence in obtaining or communicating the information to the Exceptional. Exceptional suffered pecuniary loss by reasonably and justifiably relying on the representations of Evident.

29. These actions and misrepresentations of Evident have proximately caused actual, incidental, consequential and special damages to Exceptional in an amount in excess of the minimum jurisdictional limits of this Court, for which Exceptional now sues both Evident and Trubridge, as successor by merger.

## V.  DAMAGES

30. Exceptional seeks to recover the following damages from Evident and Trubridge:

   a. Actual damages in the amount of at least $2,500,000;

   b. Mitigation costs;

   c. Attorneys' fees;

   d. Costs of court;

   e. Pre- and post- judgment interest

WHEREFORE, PREMISES CONSIDERED, Plaintiff Exceptional respectfully requests that, after trial by jury on the merits, judgment be granted against Defendants as requested above, and for other and further relief as to which it may be justly entitled.

                                        Respectfully submitted,

                                        */s/ Taylor Barr Johnson*
                                        Taylor Barr Johnson    (BARRT8851)
                                        *Attorney for Plaintiff*

**OF COUNSEL:**
**BURR & FORMAN LLP**
11 N. Water Street, Suite 22200
Mobile, Alabama 36602
Tel:   251-344-5151
Fax:   251-344-9696
Email: tjohnson@burr.com

Melissa Kingston
Texas State Bar No. 24013435
*(Application for Admission Pro Hac Vice to be filed)*
**FRIEDMAN & FEIGER, L.L.P.**
17304 Preston Road, Suite 300
Dallas, Texas 75252
Tel:  972-450-7308
Fax: 972)-788-2667
Email: mkingston@fflawoffice.com


**DEFENDANTS MAY BE SERVED AS FOLLOWS:**

EVIDENT, LLC
c/o Corporation Service Company Inc.
(Its Registered Agent for Service of Process in the State of Alabama)
641 South Lawrence Street
Montgomery, Alabama 36104

TRUBRIDGE, INC.
c/o Corporation Service Company Inc.
(Its Registered Agent for Service of Process in the State of Alabama)
641 South Lawrence Street
Montgomery, Alabama 36104