# Exhibit A



# Cloud Electronic Health Record (EHR) Service Agreement

This CLOUD ELECTRONIC HEALTH RECORD (EHR) SERVICE AGREEMENT (this "Agreement") dated this **16th** day of **June, 2021** is hereby entered into by and between EVIDENT, LLC, a Delaware Limited Liability Company, ("Evident") and EXCEPTIONAL HEALTHCARE INC. ("Customer").

WHEREAS, Evident has developed and is the owner of certain computer software systems (the "System") and INASMUCH AS, Customer wishes to obtain access to use the System as a service, and Evident is willing to provide Customer with such access to the System,

NOW, THEREFORE, in consideration of the mutual covenants hereinafter contained and of other good and valuable consideration the parties do mutually agree as follows:

1. **Engagement for Cloud EHR Services:** Evident agrees to furnish, and Customer agrees to accept and pay for, access to the System through Cloud EHR Services and the associated services as set forth in EXHIBIT A (collectively the "Cloud EHR Services"). It is expressly understood that Evident shall only provide Customer with the services specified in EXHIBIT A. Additional software, hardware and associated services requested by Customer in the future may be added to this Agreement by execution of an addendum and thereafter will be considered included in EXHIBIT A.

2. **Term of Agreement:** This Agreement shall become effective upon the signing of both parties and shall remain in effect for so long as a Facility Addendum to this Agreement remains in force.

3. **Deliverables:** The software and hardware as configured in EXHIBIT A will be delivered to Customer to provide access to the System through the Cloud EHR Services. Evident hereby authorizes Customer subject to the provisions of this Agreement to use a single entity version of the System described in EXHIBIT A. All rights to the System not expressly granted to Customer by this Agreement are retained by Evident.

4. **System Use:** Customer understands and agrees that it is being granted access through the Cloud EHR Services to use the software owned and developed by Evident and that amounts paid by it to Evident pursuant to this Agreement are not intended to and do not fully reimburse Evident for the full expense of developing the software. Customer agrees that payment of any amounts pursuant to this Agreement confer upon it access to use the software subject to Evident's proprietary rights to the same. Such access does not include the right to reproduce, publish or license any part of the software for use by an unrelated third party. Evident expressly reserves and Customer expressly consents that the entire right and title to the software is and shall remain in Evident. Evident has the exclusive right to protect by copyright or otherwise, to reproduce, publish, sell and distribute the System to any other

evident.com



# Cloud Electronic Health Record (EHR) Service Agreement

customer. If Customer reproduces, publishes, licenses or furnishes the software to or for the benefit of any other person, or if Customer uses the software on any servers other than the ones described herein, all rights conferred upon Customer shall immediately terminate and Customer agrees that it will be liable for any monetary damages to Evident which were caused by Customer's violation of this Agreement. Customer may make copies of the software, provided (a) such copies are solely for archival or backup purposes and (b) Evident's copyright or proprietary rights notices are not removed or altered.

5. **Risk of Use:** Evident believes the System is accurate and reliable but it is expressly and mutually understood and agreed that amounts paid to Evident pursuant to this Agreement do not include payment for any assumption of risk by Evident and Evident does not hereby accept any financial or other responsibility for any consequences arising out of the use of the System by Customer. The provisions of this SECTION 5 apply not only to the System but also to any further material which may be furnished by Evident to Customer.

6. **Charges:**

   a. **Service Fees/Payment Schedule:** Customer agrees to pay Evident the monthly service fees set forth in EXHIBIT A during the term of this Agreement. Within ten (10) days of the execution of this Agreement, Customer shall pay Evident a scheduling deposit equal to two (2) times the monthly service fee specified in EXHIBIT A. Evident shall apply half of the scheduling deposit to the first month's service fee. Customer's payment of monthly service fees shall commence thirty (30) days after the Go Live date. The second half of the scheduling deposit will be held by Evident until termination of this Agreement and, so long as Customer has met all of its obligations under this Agreement, applied to the final month's service fee. Anything herein to the contrary notwithstanding, if any new hardware or software is added to this Agreement, the amount set forth in EXHIBIT A will be increased as appropriate as of the first day of the month following Customer's placement of an order for such new hardware or software. Evident shall notify Customer of any change in the fees at least sixty (60) days prior to the expiration of the Initial Term or any extended term.

   b. **Travel Expenses:** Unless otherwise agreed to by Evident in writing, travel by Evident representatives to Customer's site in the implementation of the configuration specified in Exhibit A, or the implementation of any subsequent mutually agreed upon software/hardware configuration, or in the performance of any other Cloud EHR Service or any Additional Service, as specified in Section 9 below, shall be governed under the



# Cloud Electronic Health Record (EHR) Service Agreement

terms of Evident's Travel Policy and all expenses for such travel shall be billed to Customer as incurred.

 c. **Forms and Supplies:** At Customer's option, Evident can provide certain forms and supplies for use with the System. Any such forms or supplies ordered by Customer shall be billed upon shipment.

7. **Payment:** All charges under this Agreement shall be due and payable upon receipt of the invoice for such charges. Any invoices which are not paid in full within thirty (30) days of the invoice date shall bear interest at the rate of one and one-half percent (1.5%) per month on the unpaid balance. Evident reserves the right to cancel this Agreement and terminate its obligations by sending written notice to that effect at any time when one or more invoices is more than sixty (60) days past due. In the event of such cancellation, Evident may, as a condition of reinstatement, require that amounts due and payable under the reinstated Agreement be paid electronically via Automated Clearing House/Electronic Funds Transfer transactions. All amounts paid under this Agreement shall be non-refundable.

8. **Taxes:** Customer shall pay any and all taxes (except Federal and State Income Taxes) assessed by any local, state or federal taxing authority on services provided under this Agreement.

9. **Additional Services:** If Customer requests service outside the scope of the Cloud EHR Services, such service shall be furnished at Evident's option as "Additional Services" at its lowest current hourly rates and material charges.

10. **Customer Responsibilities:**

 a. **Unauthorized Service:** All maintenance service will be performed by Evident employees or Customer designated hospital employees under the direction of an Evident employee. Customer agrees that it will not permit any other persons to perform or make any maintenance, adjustments, or repairs to equipment maintained hereunder. Any repairs or damages caused by unauthorized service shall be the responsibility of the Customer and shall not be covered under this Agreement.

 b. **Application of Enhancements:** Customer shall authorize the loading of each software enhancement release provided by Evident on to the server(s) utilized by Customer for live System operations and transaction processing no more than one hundred twenty (120) days from the date of the general distribution of the release.

 c. **Certification:** Certain applications provided by Evident require annual user certification from Evident. If such software applications are supported under this Agreement, Evident

evident.com



# Cloud Electronic Health Record (EHR) Service Agreement

will provide Customer with annual user certification training at no additional cost. It is expressly understood that Evident, at its option, may terminate support for any application that requires such user certification should Customer fail to receive or maintain the required certification for the application.

d. **Third Party Intellectual Property Rights:** Customer is solely responsible for obtaining any and all licenses necessary for the electronic use of any content not provided by Evident. In the event it is suspected that Customer is maintaining any content in violation of the intellectual property rights of a third party, Evident shall notify Customer of such suspected violation and provide Customer an opportunity to i) provide documentation of Customer's right to use the content; or ii) obtain any required licensing for continued use of the content and documentation of the same. Evident shall have the right to verify Customer's right to use the content with the owner of the intellectual property rights of the content (the "Owner"). In the event Customer does not acquire the right to use the content within a reasonable period of time, Evident shall have the right to i) notify the Owner of the suspected violation; ii) remove the content as may be required by the Owner; and/or iii) suspend Customer's right to use affected portions of the System until such time as Customer obtains any required licensing for the content.

Evident reserves the right to suspend and/or terminate its support obligations if Customer fails to meet its responsibilities described above.

11. **Configuration:** Customer understands and specifically agrees that the System is intended for use only with the equipment described in EXHIBIT A and further understands that the System may not be compatible with certain types of equipment. Evident makes no representation or warranty of any sort that the System will be compatible for use with any equipment other than that described herein.

12. **Warranty:** Evident hereby warrants that the System will perform according to the Warranty Specifications. "Warranty Specifications" shall be defined as all written documentation provided by Evident to Customer inclusive of Evident's response to Customer's request for proposal, if any, and all application software manuals, operations manuals, training materials, and any updates thereto, used in conjunction with the System.

13. **Insurance:** Customer shall keep any Evident supplied equipment located at any Customer facility insured against loss by fire, theft and all other hazards (comprehensive coverage) by insurers and in form, amount and coverage satisfactory to Evident, but not less than the original cost of the equipment, or such other amount as shall be approved by Evident in



# Cloud Electronic Health Record (EHR) Service Agreement

writing. The Customer shall bear the entire risk of loss or damage to said equipment from any cause.

14. **Save Harmless:** Customer shall assume the entire responsibility and liability for, and shall indemnify and save harmless Evident and its employees from and against, any and all loss or injury that any of them may sustain as a result of any third party claims arising out of or in connection with any patient care or related services provided by Customer or any of its employees, except to the extent that such loss or injury results from the willful misconduct or gross negligence of Evident or any of its employees. Customer agrees to assume the defense of any such claims at law or in equity that may be brought against Evident or any of its employees and to pay the amount of any judgment that may be entered against Evident or any of its employees or the amount of any reasonable settlement of any such claims.

15. **Liability:** EVIDENT'S LIABILITY FOR FURNISHING SERVICES UNDER THIS AGREEMENT SHALL BE LIMITED TO REPLACING THE EQUIPMENT AND RESTORING THE SOFTWARE COVERED BY THIS AGREEMENT TO GOOD OPERATING CONDITION. EVIDENT SHALL NOT BE LIABLE FOR ANY DAMAGES OR LOSSES INCURRED BY THE CUSTOMER AS A RESULT OF THE LOSS OF USE, OR FAILURE OF THE EQUIPMENT, OR ANY PART OR COMPONENT THEREOF, TO PERFORM, OR FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES RESULTING FORM OR OCCASIONED BY THE FAILURE TO EVIDENT TO PERFORM ANY OBLIGATION UNDER THIS AGREEMENT. IN NO EVENT SHALL EVIDENT'S LIABILITY EXCEED THE COST OF REPLACEMENT OR REPAIR OF SUCH EQUIPMENT AND SOFTWARE.

16. **Open Source:** Notwithstanding any other statements in this Agreement, the System may include or require download of third party software including free, copyleft and open source software components (collectively referred to as "Open Source Software") that are distributed in compliance with the particular licensing terms and conditions of or attributable to the Open Source Software. Evident provides the Open Source Software to Customer "AS IS" without any warranties or indemnities of any kind.

17. **Delays:** Evident shall not be liable for any delay or failure to provide the Cloud EHR Services, or to perform any other duty or obligation, if the delay or failure resulted from, arose out of, or was caused by, any cause or event beyond the reasonable control of Evident.

18. **Assignment:** This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and permitted assigns. Neither this Agreement nor any of the rights hereunder may be assigned, sold or otherwise transferred by a party without the express written consent of the other. Such consent will not be unreasonably withheld. Notwithstanding the foregoing, Customer's account must be in good

evident.com



# Cloud Electronic Health Record (EHR) Service Agreement

standing and Customer must be current with all of its obligations prior to the assignment of the Agreement to a third party.

19. **Notices:** Written notices required hereunder shall be sent to the address of the receiving party specified below or a valid electronic mail address of an authorized representative of the receiving party.

20. **Attorney Fees:** Should Evident retain an attorney to collect overdue fees, or to institute a suit or action to enforce any provision in this Agreement, Customer agrees to pay the resulting attorney's fees, court costs, collection, and enforcement fees.

21. **Confidentiality:**

   a. **Confidential Information:** The parties hereto acknowledge that all information, knowledge, know-how, data, and documents of, and any software systems developed by, a party, to include such information conveyed in whatever form, whether specifically marked as confidential or not, constitute valuable assets of and are proprietary to such party (collectively referred to herein as "Confidential Information"). Each party agrees to hold the other party's Confidential Information in strict confidence and shall not disclose any Confidential Information without the prior written consent. This provision shall survive termination of this Agreement.

   The confidentiality responsibilities specified herein shall not apply to any information that:

   (i) is in or comes into the public domain through no breach of this Agreement;

   (ii) is acquired from a third party who owes no obligations of confidence to the other party to this Agreement in respect thereof,

   (iii) was already known at the time received as shown by prior written records, or

   (iv) was independently developed without violating any obligation under this Agreement.

   b. **Use of Confidential Information; Return/Destruction:** Confidential Information may only be used for internal operations and exclusively for the purposes for which the Confidential Information was disclosed. Access to Confidential Information shall be limited to individuals with a need to know and further limited to only those portions that are necessary. Upon termination of this Agreement, each party shall either return or destroy all of the other party's Confidential Information in its possession.

   c. **Disclosures Required by Law:** If either party is required by any legal or investigative process to disclose any Confidential Information, that party shall provide the other with prompt notice of each such request and the information requested, so that the other party

evident.com



# Cloud Electronic Health Record (EHR) Service Agreement

may seek to prevent disclosure or the entry of a protective order. If disclosure is lawfully required and a protective order is not obtained, the party from whom disclosure is required shall disclose only such information as may be required to meet the requirements of the order for disclosure.

d. **No License, Representations or Warranties:** Nothing in this Agreement is intended to grant either party any rights to the intellectual property right of the other party. All Confidential Information shall be deemed the property of the disclosing party. ALL CONFIDENTIAL INFORMATION SHALL BE FURNISHED IN GOOD FAITH, BUT IT IS EXPRESSLY UNDERSTOOD THAT CONFIDENTIAL INFORMATION IS PROVIDED "AS IS" WITHOUT ANY REPRESENTATION OR WARRANTY OF ANY KIND.

22. **Entire Agreement:** This Agreement, to include the Facility Addendum(s), the Third Party Software Addendum, and the Business Associate Agreement, sets forth the entire understanding of the parties hereto and supersedes all other oral or written representations except as otherwise provided herein.

23. **Governing Law; Venue:** This Agreement shall be construed and enforced under the laws of the State of Alabama, excluding rules as to choice and conflict of law. The exclusive and sole venue for any action brought to enforce or interpret this Agreement shall be the state and federal courts situated in Mobile County, Alabama and each party hereby consents to the exercise of personal and subject-matter jurisdiction by such courts.

24. **Facilities Added to Agreement:** So long as Customer maintains its account in good standing, Customer may receive Cloud EHR Services under the terms of this Agreement for any hospital-based healthcare enterprises Customer is the owner of or maintains controlling interest in (an "Eligible Facility"). For the purposes of this Agreement, each Eligible Facility added to this Agreement shall be i) referred to individually as a "Facility" and collectively the "Facilities" and ii) will be included in this Agreement by signature of the parties on a Facility Addendum. All references to EXHIBIT A in this Agreement shall include any EXHIBIT A to the Cloud EHR Service Agreement attached to an executed Facility Addendum.

*[Signature page follows]*



# Cloud Electronic Health Record (EHR) Service Agreement

IN WITNESS WHEREOF, the parties hereto have executed this Cloud EHR Service Agreement.

EXCEPTIONAL HEALTHCARE INC.

1601 Elm Street

Dallas, TX 75201

By: *Bruce W. McVeigh*
Bruce W. McVeigh (Jun 24, 2021 18:29 CDT)
(Authorized Signature)

Name: Bruce W. McVeigh
(Printed)

Title: Chief Operating Officer

Date: Jun 24, 2021

EVIDENT, LLC

6600 Wall Street

Mobile, AL 36695

By: *J. Boyd Douglas*
J. Boyd Douglas (Jun 25, 2021 06:26 CDT)
(Authorized Signature)

Name: J. Boyd Douglas
(Printed)

Title: President/Chief Executive Officer

Date: Jun 25, 2021

evident.com



# Cloud EHR Service Agreement
# Exhibit A
# Services and Fees

1. **Access Services:**  Access Services will include:

   A. **Thrive EHR:**  The System configuration for each Facility added to this Agreement by execution of a Facility Addendum shall be detailed in a Cloud EHR Service Agreement Exhibit A attached to such Facility Addendum.

   B. **Conversion/Setup:**  System setup and conversion of applicable data as described in EXHIBIT B from each Facility's present system to the new System configuration.

   C. **Installation and Training:**  Installation and training services to include the installation of the software and hardware and education of hospital personnel in the operation of the hardware and correct use of the System

   D. **Travel Expenses:**  All Evident travel expenses for the implementation shall be billed to Customer as incurred.

   E. **Service Equipment:**  All equipment provided by Evident and specified under a Facility Addendum for on-site use by a Facility shall remain the property of Evident.

2. **Support Services:**

   A. **Availability:**

   - Standard Support Period:                                          **8:00 A.M. to 5:00 P.M.**
     Customer local time, Monday through Friday, except for Holidays.

   - Emergency Service:                                          **24 hours a day/7 days per week**
     An emergency is any condition that causes the central processing unit
     or a departmental segment of the application software to be inoperable.

   B. **Software:**  Software Support Services will include:

   - Telephone support to solve operational or technical problems.

   - Response to service requests within two (2) hours during the Standard Support Period.

   - All enhancements to the standard System to include routine updates and updates to the System dictated by applicable changes in Federal and State regulations.

   - A secure connection between Evident and any Evident servers located at the hospital.

   - Maintenance to keep the System in compliance with the Warranty Specifications.

   - Correction of any programming error.

   - **Certification:**  Certain applications provided by Evident require annual user certification from Evident.  If such software applications are supported under this Agreement, Evident



# Cloud EHR Service Agreement
# Exhibit A
# Services and Fees

will provide Customer with annual user certification training at no additional cost. It is expressly understood that Evident, at its option, may terminate support for any application that requires such user certification should Customer fail to receive or maintain the required certification for the application.

C. **Hardware:** Hardware Support Services will include:

- Maintenance to keep service equipment in good operating condition.
- Response to service requests within two (2) hours during the Standard Support Period.
- Replacement of on-site service equipment not repaired within forty-eight (48) hours.
- Repair and return of service equipment requiring maintenance.
- Shipping of all replacement equipment to the hospital. (Customer will be responsible for return shipments.)

D. **Exclusions:** Support Services **does not** include:

- On site electrical work external to any equipment.
- On site Internet or telephone service needed to establish communication connectivity.
- Installation, movement, or maintenance of any equipment not provided by Evident.
- Service or repair of damage resulting from accident, transportation after delivery, neglect, misuse, unauthorized service, acts of God or any causes other than ordinary use.
- Furnishing of supplies, accessories or magnetic media.
- Making specification changes or providing equipment relocation services.

3. **Monthly Service Fee:** Monthly service fees for each Facility added to this Agreement by execution of a Facility Addendum shall be detailed in a Cloud EHR Service Agreement EXHIBIT A attached to such Facility Addendum. The following is a summary of service fees for the initial Facilities:

| | |
|---|---|
| **Exceptional Health Care Community Hospital, Amarillo** | **$ 17,261** |
| **Exceptional Health Care Community Hospital, Maricopa** | **$ 17,261** |

evident.com



# Cloud EHR Service Agreement
# Exhibit B
# Conversion/Setup

1. **Conversion/Setup**

   If an application listed below is included in Exhibit A, Evident will be responsible for the data conversion/set up of the items listed below as applicable. Customer will be responsible for providing an electronic copy and/or printed hard copy, as applicable, of all pertinent information to be converted.

   A. **Financial Applications**

   General Ledger
   - Chart of Accounts
   - Account Balances (Monthly Activity)
   - Balance Sheet Format
   - Profit/Loss Statement Formats

   Patient Accounting (A/R and Bad Debt)
   - Patient Demographic and Guarantor Info
   - Outstanding Primary Insurance
   - Beginning Balance (as of cut-off date)

   Payroll
   - Employee Masters
   - Year to Date Employee Balances
   - Quarter to Date Employee Balances

   Patient Accounting (Master Charge List)
   - Item Master

   Accounts Payable
   - Vendor Masters

   Patient Accounting (Business Office Tables)
   - Department Table
   - Room List
   - Physician List
   - Insurance Company Table
   - Service Code Table
   - System Operation Tables

   Digital Signature
   - 20 Documents

   B. **Clinical Applications**

   Laboratory
   - Normal Ranges
   - Reflex Criteria
   - Calculations
   - Report Formats
   - Quality Control Definitions

   Pharmacy
   - Vendor Item Conversion and Upload
   - Formulary Conversion and Upload
   - Order Definitions
   - Calculations

   Physical Therapy
   - Transcription Headers
   - Transcription Formats

   Cardiopulmonary
   - ABG Formats
   - Transcription Formats
   - Transcription Headers

   Radiology
   - Patient Preparation Information
   - Transcription Headers
   - Transcription Normals
   - Quality Control Definitions
   - Mammography Tables and Definitions
   - Recall Letters and Notifications

   OR Management
   - Preference Cards
   - Procedure List
   - Instructions
   - Locations
   - Equipment/Instruments
   - Anesthesiologist Tables/Types
   - Physicians
   - Reason Codes

evident.com



# Cloud EHR Service Agreement
# Exhibit B
# Conversion/Setup

C. **Patient Care Applications**

Order Entry
- Order Formats
- Help Screens
- Item Conversion for Charges
- Standing/Group Orders

Point of Care
- Chart Types
- Initial Interview
- Physical Assessment
- Nursing Activities
- MedAct  (Electronic Kardex)
- Configuration of Site Specific Preferences
- Report Formats

Enterprise Wide Scheduling
- Caller ID/Locations
- Fax Tables
- Instructions
- Tasks
- Conflict Codes

Computerized Physician Order Entry
- 25 Order Sets

Emergency Department IS
- 25 Order Sets
- 25 Templates

Notes
- 25 Templates

It is expressly understood and agreed that any electronic forms and/or templates converted by Evident for Customer shall be included in a template library to be maintained by Evident.  In consideration of contribution to the template library, Customer shall be provided unlimited access to the content contained in the template library.

It is further understood that any templates obtained by Customer from the template library must be thoroughly reviewed by Customer prior to use.  Evident makes no guarantee as to the validity or accuracy of the templates available in the template library and does not accept any responsibility for any consequences arising out of their use.

evident.com



# Cloud EHR Service Agreement
# Third-Party Software Addendum
### (Revised February 3, 2021)

The System may incorporate software and/or content supplied by third parties and certain third party suppliers, as identified below, require additional terms and conditions with regard to the use of their products. Customer expressly understands that the terms and conditions specified in this Addendum may be revised from time-to-time without notice and that Customer's use of a third party product signifies its acceptance of the then current terms and conditions applicable to such third party product. Upon request, Evident shall provide Customer with a copy of the current version of this Addendum.

**ACUCORP, INC.:** The application software developed by Evident was compiled using an ACUCOBOL-GT Development System and requires software licensed from Acucorp, Inc. in order to run. This software is herein referred to as the ACUCOBOL-GT Runtime System. By signing this agreement, the user agrees not to copy and distribute the ACUCOBOL-GT Runtime System and to otherwise respect Acucorp, Inc.'s copyright and trade secret interest in the Runtime System.

REGISTRATION: As part of this Agreement, Evident will notify Acucorp, Inc. that you are registered as an Acucorp, Inc. licensed end-user.

ADDRESS: Acucorp, Inc., 7950 Silverton Ave, Suite 201, San Diego, CA 92126

**AMERICAN HOSPITAL ASSOCIATION (AHA):** This product includes Uniform Billing (UB) codes which are provided through licensure from Health Forum, LLC, a wholly owned subsidiary of the American Hospital Association, and require additional terms and conditions. Customer shall abide by the terms and conditions specified in the Health Forum Terms and Conditions which shall be made available upon request. This license is granted for non-federal government use of the product.

**AMERICAN MEDICAL ASSOCIATION (AMA):** This product includes Current Procedural Terminology (CPT®) codes as applicable, which are provided through licensure from the American Medical Association. License limitations as provided in the AMA End User Agreement Checklist shall apply. This license is granted for non-federal government use of the product.

**COMMONWELL HEALTH ALLIANCE:** CommonWell Health Alliance, as a third party provider of patient identity and data routing management services, requires additional terms and conditions associated with their product. Customer shall abide by the CommonWell Health Alliance – Core Commercial Services End User Terms and Conditions and Conditions and the Carequality Connections Terms, as applicable, which shall be made available upon request.

**DIGI INTERNATIONAL, INC.:** Some Software provided under this license is derived from software provided by Digi International, Inc. under license to Evident. Evident has assumed all responsibility for providing this Software, and Digi International, Inc. will not provide any customer support for this Software. **DIGI INTERNATIONAL, INC. DISCLAIMS ALL WARRANTIES WITH RESPECT TO THE USE OF SUCH SOFTWARE, INCLUDING, WITHOUT LIMITATION, ANY WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, AND WARRANTIES AGAINST INFRINGEMENT.** The user is only authorized to use the Software in object code form. The user is prohibited from reverse engineering, reverse compilation, or reverse assembly of the Software. This license is granted for non-federal government use of the Software.

**HEALTH LANGUAGE, INC. (HLI):** HLI, as a third party licensor of HLI Software and HLI Content, requires additional terms and conditions associated with their product. Customer shall abide by the HLI Terms and Conditions of Sublicense Agreement ("Sublicense Agreement") which is available at http://www.healthlanguage.com/terms-of-use/.

**INPRIVA, INC.:** Inpriva, as a third party licensor of Health Network Services, requires additional terms and conditions associated with their product. Customer shall abide by the terms and conditions specified in the Inpriva End-User License Agreement which shall be made available upon request.

**LOGI ANALYTICS, INC.:** Logi Analytics, Inc., as third party licensor of Logi Analytics Software requires additional terms and conditions applicable to their products.

1. Customer shall restrict access to and use of the Logi Analytics Software to machine-readable, executable, object-code or bytecode form only.

2. Customer is prohibited from (a) allowing use of the Logi Analytics Software by any third party other than Customer for the Customer 's internal business purposes; (b) using the Logi Analytics Software in any time-sharing, service bureau, application service provider or software-as-a-service arrangements or services, including any use to provide services or process data for the benefit of, or on behalf of, any third party; (c) transferring or conveying the rights or licenses granted to Customer; and (d) causing or permitting the reverse engineering, disassembly or decompilation of the Logi Analytics Software;

3. Logi Analytics, Inc. is a third party beneficiary of the agreements between Evident and Customer with respect to the Customer's use of, or obligations with respect to, the Logi Analytics Software, with full authority to enforce such rights. **LOGI ANALYTICS, INC. DISCLAIMS ANY AND ALL WARRANTIES AND LIABILITIES FOR ANY CUSTOMER LOSSES OR DAMAGES, WHETHER DIRECT OR INDIRECT, INCLUDING INCIDENTAL OR CONSEQUENTIAL DAMAGES, ARISING FROM THE USE OF THE LOGI ANALYTICS SOFTWARE.**

**MICROMEDEX, INC.:** Micromedex, as third party licensor of CareNotes, Ultimedex, and InfoButton requires additional terms and conditions applicable to their products.

1. Customer is prohibited from reverse engineering, disassembling, or decompiling the integrated software package.

2. Customer is prohibited from using any version of the integrated software package other than the most current version.

3. Customer shall not permit any information generated or provided by the integrated products to be used in connection with the treatment of patients by any person(s) other than licensed healthcare professionals directly connected with the Customer as employees or affiliates, and then, only under the supervision of, and reliance upon, the clinical discretion and judgement of a licensed physician. As between the Customer and Micromedex, the Customer assumes full responsibility for ensuring the appropriateness of using and relying upon the information in view of all attendant circumstances indications, and contraindications.

4. Micromedex, Inc., as third party licensor, disclaims any warranty or representation to Customer.

**SURESCRIPTS:** Surescripts, as a third party licensor of the Surescripts System, requires additional terms and conditions associated with their product. Customer shall abide by the Surescripts Terms and Conditions which shall be made available upon request.

evident.com



# Cloud EHR Service Agreement
# Third-Party Software Addendum
### (Revised February 3, 2021)

**3M:** 3M, as a third party licensor of 3M Grouper Plus Content Services ("3M Software"), requires additional terms and conditions associated with their product. The following terms and conditions apply to the usage of 3M Software and any related documents ("Documents"):

1. The license to access and use the 3M Software and Documents pursuant to the Evident Subscription Services Agreement (which shall be referred to as the "End User License Agreement" in this exhibit) is non-exclusive and non-assignable. Such license to access and use the 3M Software and Documents is solely for Customer's internal use within the United States and its territories and not for use on behalf of any other entity except as expressly authorized in the End User License Agreement.

2. Customer is prohibited from making any modifications to or derivatives of the 3M Software or Documents, including the removal of any copyright or other proprietary rights notices.

3. Customer is prohibited from disassembling or otherwise reverse engineering the 3M Software, except as may be specifically authorized by law.

4. Customer is prohibited from providing copies of the 3M Software or Documents to third parties, or making the 3M Software or Documents accessible to third parties.

5. Customer is prohibited from making copies of the 3M Software or Documents except for archival and backup copies authorized by the End User License Agreement.

6. Customer is required to treat the 3M Software and Documents in a confidential manner and to use Customer's best efforts to prevent disclosure of the contents of the 3M Software and Documents to third parties.

7. Customer must ensure that anyone who has Customer's authorized access to the 3M Software and Documents complies with the provisions of the End User License Agreement.

8. Any liability of 3M and/or its suppliers to Customer is expressly limited to the fullest extent permitted by law.

9. Customer's right to use any 3M Software will be terminated in the event Customer violate any terms and conditions of this exhibit and fail to cure such violation within 30 days of written notice thereof.

**TRUCODE LLC:** TruCode LLC, as a third party licensor of TruCode Encoder Essentials and TruCode Client Server, requires additional terms and conditions associated with their product. Customer shall abide by the terms and conditions specified in the TruCode Terms and Conditions which shall be made available upon request.

**VIENNA ADVANTAGE:** VIENNA Advantage GmbH, as a third party licensor of Vienna Advantage, requires additional terms and conditions associated with their product. Licensee shall abide by the terms and conditions specified in the Vienna Advantage Product License Agreement which shall be made available upon request.

**WOLTERS KLUWER:** Wolters Kluwer, as a third party licensor of ClinicNote, requires additional terms and conditions associated with their product. Customer shall abide by the terms and conditions specified in the Wolters Kluwer Terms and Conditions which shall be made available upon request.

evident.com



# Business Associate Agreement

This **BUSINESS ASSOCIATE AGREEMENT** (this "Agreement") dated this **16th** day of **June, 2021** is hereby entered into by and between **COMPUTER PROGRAMS AND SYSTEMS, INC.,** inclusive of all of its wholly owned subsidiaries, (collectively the "Business Associate") and **EXCEPTIONAL HEALTHCARE INC.** ("Covered Entity").

WHEREAS, Business Associate and Covered Entity have entered into one or more agreements through which Business Associate will provide services to Covered Entity (each a "Service Agreement" and collectively "the Service Agreements"); and

WHEREAS, the parties are subject to the Administrative Simplification requirements of the Health Insurance Portability and Accountability Act of 1996, and regulations promulgated there under, including the Standards for Privacy of Individually Identifiable Protected Health Information and Standards for the Security of Electronic Protected Health Information at 45 Code of Federal Regulations ("C.F.R.") Parts 160 and 164 and the Health Information Technology for Economic and Clinical Health Act of 2009 (collectively the "Regulations"); and

WHEREAS, the performance of Business Associate's obligations as set forth in the Service Agreements could require Business Associate's receipt of or access to Protected Health Information; and

WHEREAS, the Regulations require Covered Entity to enter into a contract with Business Associate, in its role as a "business associate" under the Regulations, in order to mandate certain protections for the privacy and security of Protected Health Information.

NOW, THEREFORE, it is mutually understood and agreed to by both parties that:

1. Business Associate Responsibilities.   The provisions of this Agreement set forth the obligations of Business Associate as a "business associate" under the Regulations.

2. Definitions.   The following terms shall have the same meaning as those terms in the Regulations: "Disclose," "Disclosed" and "Disclosure"; "Protected Health Information"; "Use" (in both its verb and noun forms) or "Uses"; "Data Aggregation"; "Health Care Operations"; "Individual"; "Breach"; "Unsecured Protected Health Information"; "Designated Record Set"; "Secretary"; and "Security Incident."

3. Permitted Uses and Disclosures of Protected Health Information.  Business Associate:

   (a) shall Use and Disclose Protected Health Information that is deemed to be minimally necessary or appropriate to develop, operate and maintain those activities described in the Service Agreements and as provided in this Section 3;

   (b) shall Disclose Protected Health Information to Covered Entity upon request;

evident.com



# Business Associate Agreement

(c) may, as necessary for the proper management and administration of its business or to carry out its legal responsibilities:

    (i) Use Protected Health Information;

    (ii) Disclose Protected Health Information if (A) the Disclosure is required by law, or (B) Business Associate obtains reasonable assurance from the person to whom the information is Disclosed that the Protected Health Information will be held confidentially and Used or further Disclosed only as required by law and for the purpose for which it was Disclosed to the person, and the person agrees to notify Business Associate of any instances of which the person is aware in which the confidentiality of the Protected Health Information has been breached. Business Associate will in turn notify Covered Entity of any breach of confidentiality known to it as a result of this provision as provided in section 5 of this Agreement. Only information which is minimally necessary to satisfy the request will be Disclosed;

(d) may perform Data Aggregation for the Health Care Operations of Covered Entity; and

(e) may de-identify Protected Health Information provided that Business Associate implements de-identification criteria in accord with 45 C.F.R. §164.514(b).

Business Associate shall not Use or Disclose Protected Health Information for any other purpose or in any manner that would constitute a violation of the Regulations if so Used or Disclosed by Covered Entity.

4. <u>Adequate Safeguards</u>. Business Associate warrants that it shall implement and maintain:

    (a) adequate safeguards to prevent the Use or Disclosure of Protected Health Information in any manner other than as permitted by this Agreement; and

    (b) administrative, physical, and technical safeguards that reasonably and appropriately protect the confidentiality, integrity, and availability of the electronic Protected Health Information that Business Associate may create, receive, maintain, or transmit on behalf of Covered Entity.

5. <u>Reporting</u>. Business Associate shall report to Covered Entity each Use or Disclosure that is made by Business Associate, its employees, representatives, agents or subcontractors, but is not specifically permitted by this Agreement and/or any Security Incident of which it becomes aware. The initial report shall be made by telephone call to Covered Entity's designated "Privacy Officer" within forty-eight (48) hours from the time the Business Associate determines that a non-permitted Use or Disclosure and/or Security Incident has occurred, followed by a written report to the "Privacy Officer" no later than five (5) days from the date

evident.com



# Business Associate Agreement

the Business Associate determines that such non-permitted Use or Disclosure and/or Security Incident has occurred.

6. <u>Breach</u>.  In the event an impermissible Use or Disclosure is made by Business Associate, its employees, representatives, agents or subcontractors in the course of providing Covered Entity with services that are "covered functions" as defined in 45 C.F.R. § 164.103 and it is determined that such impermissible Use or Disclosure constitutes a Breach, the parties shall work together in good faith to create and implement a mutually agreed upon plan to accomplish Breach notifications as may be required under, and in compliance with, the Regulations.

7. <u>Access and Amendment of Protected Health Information</u>.  To the extent Business Associate maintains Protected Health Information in a Designated Record Set in the performance of its obligations under the Service Agreements, Business Associate will provide Covered Entity, or at Covered Entity's direction the Individual or the Individual's designee, with access to Protected Health Information as necessary to satisfy Covered Entity's obligations under 45 C.F.R § 164.524 and perform any amendments to such Protected Health Information in accordance with 45 C.F.R § 164.526.  In the event Business Associate should receive a request from an Individual regarding access to or amendment of the Individual's Protected Health Information, Business Associate shall forward any such request to Covered Entity for review and fulfillment.

8. <u>Compliance with Privacy Rule</u>.  To the extent the Business Associate is to carry out one or more of Covered Entity's obligation(s) under Subpart E of 45 C.F.R. Part 164, Business Associate will comply with the requirements of Subpart E that apply to the Covered Entity in the performance of such obligation(s)

9. <u>Availability of Internal Practices, Books and Records to Government Agencies</u>.  Business Associate agrees to make its internal practices, books and records relating to the Use and Disclosure of Protected Health Information available to the Secretary for purposes of determining Covered Entity's and Business Associate's compliance with the Regulations.

10. <u>Accounting of Disclosures of Protected Health Information</u>.  Upon an Individual's request, Business Associate shall provide to Individual an accounting of each Disclosure of Protected Health Information made by Business Associate or its employees, agents, representatives or subcontractors in accordance with 45 C.F.R. § 164.528.  The accounting shall include: (a) the date of the Disclosure; (b) the name, and address if known, of the entity or person who received the Protected Health Information; (c) a brief description of the Protected Health

evident.com



# Business Associate Agreement

Information disclosed; and (d) a brief statement of the purpose of the Disclosure. For each Disclosure, Business Associate shall track the information specified in (a) through (d), above, and shall securely maintain the information for six (6) years from the date of the Disclosure.

11. <u>Covered Entity Responsibilities</u>.

    (a) <u>Notifications</u>. To the extent it may affect Business Associate's Use or Disclosure of Protected Health Information, Covered Entity shall notify Business Associate of any:

        (i) limitation(s) in its notice of privacy practices in accordance with 45 C.F.R. §164.520;

        (ii) changes in, or revocation of, permission by an Individual to Use or Disclose his or her Protected Health Information; and

        (iii) restriction on the Use or Disclosure of Protected Health Information that Covered Entity has agreed to or is required to abide by under 45 C.F.R. §164.522.

    (b) <u>Permissible Requests</u>. Covered Entity shall not request Business Associate to Use or Disclose Protected Health Information in any manner that would not be permissible under Subpart E of 45 C.F.R. Part 164 if done by Covered Entity.

12. <u>Termination</u>. In addition to and notwithstanding the termination provisions set forth in the Service Agreements, this Agreement and the Service Agreements may be terminated if it is materially proven that a party has intentionally violated any term of this Agreement. Upon notification, the breaching party shall use its best efforts to immediately cure a reported violation or use every means available to cure the violation as quickly as practicable. In the event a reported violation cannot be cured immediately, the breaching party shall have thirty (30) days to cure any violation before any termination clause may be exercised. In the event neither termination nor cure is feasible, the non-breaching party shall report the breach to the Secretary. Business Associate's obligations under this Agreement shall survive after termination only in the event that Business Associate retains any of Covered Entity's Protected Health Information, otherwise Business Associate's obligations under this Agreement shall terminate upon the termination or expiration of the Service Agreements and disposition of any Covered Entity Protected Health Information as provided herein.

13. <u>Disposition of Protected Health Information Upon Termination or Expiration</u>. Upon termination or expiration of the Service Agreements, Business Associate shall either return or destroy, in Covered Entity's sole discretion and in accordance with any instructions by Covered Entity, all Protected Health Information in the possession or control of Business Associate or its agents and subcontractors. However, if Covered Entity determines that neither return nor destruction of Protected Health Information is feasible, Business Associate

evident.com



# Business Associate Agreement

may retain Protected Health Information provided that Business Associate (a) continues to comply with the provisions of this Agreement for as long as it retains Protected Health Information, and (b) further limits Uses and Disclosures of that Protected Health Information to those purposes that make its return or destruction infeasible.

14. <u>No Third Party Beneficiaries</u>.  There are no third party beneficiaries to the provisions of this Agreement.

15. <u>Use of Subcontractors and Agents</u>.  Business Associate shall require each of its agents and subcontractors that receive Protected Health Information from Business Associate to execute a written agreement obligating the agent or subcontractor to comply with all the terms of this Agreement.

16. <u>Inclusion in the Service Agreements</u>.  The terms and conditions of this Agreement shall hereby be included in all Service Agreements executed by and between the parties.  In the event of a conflict between any term or condition of the Service Agreements and this Agreement, the terms and conditions of this Agreement shall govern.

17. <u>Miscellaneous</u>.

  A. <u>Regulatory Reference</u>.  Reference in this Agreement to the Regulations means the Regulations as in effect or as amended.

  B. <u>Amendment</u>.  The parties agree to take such action as is necessary to amend this Agreement from time to time as is necessary for the parties to comply with applicable requirements of the Regulations.

  C. <u>Interpretation</u>.  Any ambiguity in this Agreement shall be resolved to permit each party to comply with applicable requirements of the Regulations.

[*Signature page follows*]



# Business Associate Agreement

**IN WITNESS WHEREOF,** the parties hereto have executed this Business Associate Agreement.

**EXCEPTIONAL HEALTHCARE INC.**

1601 Elm Street

Dallas, TX 75201

By: *Bruce W. McVeigh*
Bruce W. McVeigh (Jun 24, 2021 18:29 CDT)
    (Authorized Signature)

Name: __Bruce W. McVeigh__
        (Printed)

Title: __Chief Operating Officer__

Date: __Jun 24, 2021__


**COMPUTER PROGRAMS AND SYSTEMS, INC.**

6600 Wall Street

Mobile, AL 36695

By: *J. Boyd Douglas*
J. Boyd Douglas (Jun 25, 2021 06:26 CDT)
    (Authorized Signature)

Name: __J. Boyd Douglas__
        (Printed)

Title: __President/Chief Executive Officer__

Date: __Jun 25, 2021__