IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **EXCEPTIONAL HEALTHCARE, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | CIVIL ACTION 24-0388-WS-C |
| ) | |
| **EVIDENT, LLC, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

# ORDER

This matter is before the Court on the defendants' partial motion to dismiss the second amended complaint. (Doc. 24). The plaintiff has filed a response and the defendants a reply, (Docs. 26, 30), and the motion is ripe for resolution. After careful consideration, the Court concludes the motion is due to be granted in part and denied in part.

# BACKGROUND

According to the second amended complaint ("the Complaint"), (Doc. 20), the plaintiff owns and operates several hospitals. In June 2021, the plaintiff entered into a "Cloud Electronic Health Record 'EHR' Service Agreement" ("the Contract") with the defendants.[1] The Contract provided the plaintiff with access to, and use of, the defendants' EHR technology record system ("the System"). The plaintiff entered the Contract in reliance on certain representations regarding the System and certain support services. In September 2023, having realized the System would never function as promised, the plaintiff declared the defendants in breach and ceased using the System.

---

[1] The Contract was entered with the first named defendant ("Evident"). Evident was a wholly owned subsidiary of, and was later merged into, the predecessor of the second named defendant ("TruBridge"). (Doc. 20 at 2). Except when necessary for clarity, this opinion employs the global term, "defendants."

Count One asserts a claim for breach of contract. Counts Two, Three, and Four assert claims for breach of warranty. Counts Five, Six, and Seven asserts claims for fraud and misrepresentation.

## DISCUSSION

The instant motion seeks dismissal of the warranty and tort claims but not the contract claim.

**I. Breach of Warranty.**

The plaintiff's warranty claims are brought pursuant to Alabama's version of the Uniform Commercial Code ("UCC"), (Doc. 20 at 14-17), which applies to "transactions in goods." Ala. Code § 7-2-102(1). The defendants argue that the UCC does not apply to a contract "that is exclusively for services," and they say the Contract is such a contract because its title includes the term, "Service Agreement," and because its body uses the word, "service" or "services." They conclude that, "[b]ecause the [Contract] is a services agreement, there is no breach of warranty of claim [sic] under Alabama law." (Doc. 24 at 3). The plaintiff responds that "Alabama precedent recognizes 'hybrid transactions' which trigger the UCC" as to the transaction-in-goods aspect of the overall transaction, and it asserts that its warranty claims are viable under this theory. (Doc. 26 at 4-5).

The defendants have not established their premise that the Contract is "exclusively for services." Simply citing seven instances in which the Contract uses the term "service" or "services" -- which is all the defendants' principal brief offers in support of their position -- is far too facile an approach. This is especially so given that the Complaint identifies the System as the "product" the plaintiff was "buying" and describes the Contract as one "to purchase certain EHR software" from the defendants. (Doc. 20 at 3, 5, 16).

In their reply brief, the defendants assert that the Contract, including exhibits, is exclusively one for services because it uses the term, "service" or "services," not just

seven times but 97 times. (Doc. 30 at 2). This argument simply doubles down on the defendants' original position without altering its overly simplistic nature.

The defendants in their reply also argue that the Contract cannot reflect a "hybrid transaction" because: (1) the Complaint does not use the term, "good"; (2) the Contract transfers no property interest to the plaintiff; and (3) the plaintiff's claimed damages were not caused by a good but by services. (Doc. 30 at 3-4). The defendants continue that, even were the Contract a hybrid transaction, "any reasonable analysis would find the fundamental purpose of the [Contract] to be the use of the System as a service." (*Id*. at 5 (internal quotes omitted).

The defendants' arguments are too little, too late. The allegations of the Complaint identified above put the defendants on notice that the plaintiff alleges a transaction at least partially in goods, and the very authorities on which their principal brief relies expressly address hybrid transactions in such a situation. *See* Ala. Code § 7-2-102(1) ("[T]his article applies to transactions in goods and, in the case of a hybrid transaction, it applies to the extent provided in subsection (2)."); *Patterson v. Johnson's Heavy Salvage, Inc.*, 541 F. Supp. 3d 1316, 1321-22 (M.D. Ala. 2021).

"District courts, including this one, ordinarily do not consider arguments raised for the first time on reply. ... Unless the offending party articulates an adequate reason for its failure to present in its principal brief an argument then available to it, the Court will not grant relief based on arguments first raised in reply." *Parker v. Exterior Restorations, Inc.*, 653 F. Supp. 3d 1105, 1108 (S.D. Ala. 2023) (internal quotes omitted). Even though the Complaint plainly implicates a potential hybrid transaction, the defendants elected not to address the issue in their principal brief. They did so at their peril. Because the hybrid transaction issue should have been argued in the defendants' opening brief, and because they offer no explanation for their failure to do so, the Court will not consider their arguments tardily raised on reply.

In any event, the Court finds the parties' presentations too brief and superficial to allow determination at this time of whether the Contract will support a claim for breach

of warranty. The parties remain free to address this question more robustly on post-discovery motion for summary judgment.

## II. Tort.

Count Five asserts a claim for fraud. Count Six asserts a claim for fraud by non-disclosure. Count Seven asserts a claim for negligent misrepresentation. The defendants argue that all three claims must fail because: (1) they were brought after the statute of limitations expired; (2) they represent improper attempts to convert a contract claim into tort claims; and (3) they are not pleaded with the particularity required by Rule 9(b). The defendants argue in addition that Count Six is barred for failure to plead facts that would give rise to a duty to disclose. The Court considers these arguments in turn.

### A. Statute of Limitations.

The limitations period for fraud claims in Alabama is two years. Ala. Code § 6-2-38(*l*); *Ex parte Abbott Laboratories*, 342 So. 3d 186, 194 n.7 (Ala. 2021). The Complaint alleges that the parties entered the Contract on or about June 16, 2021. (Doc. 20 at 3).[2] The complaint also alleges that the plaintiff entered the Contract "in reliance on a myriad of representations" by the defendants. (*Id*. at 4). The defendants conclude that the statute of limitations expired in July 2023, (Doc. 24 at 5-6),[3] long before this action was filed in October 2024.

The defendants in their principal brief prudently address Alabama's "discovery rule."[4] As they note, "[a] party will be deemed to have 'discovered' a fraud as a matter of

---

[2] The signatures on the Contract are dated June 24 and 25, 2021. (Doc. 20-1 at 9).

[3] It is unclear why the defendants believe the Contract was entered in July rather than June, but the difference is immaterial for present purposes.

[4] "In actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute his action." Ala. Code § 6-2-3.

4

law upon the first of either actual discovery of the fraud or when the party becomes privy to facts that would provoke inquiry in a reasonable person that, if followed up, would lead to the discovery of the fraud." *Price v. Alabama One Credit Union*, 397 So. 3d 549, 555 (Ala. 2023) (internal quotes omitted).  The defendants, (Doc. 24 at 6 & n.1), argue that the following excerpt from the Complaint reflects the plaintiff's 'discovery of the fraud' under this formulation no later than August 2022:

> While Exceptional was initially having some issues with Evident's EHR system, it assumed that the problems would subside once the implementation process was complete.  By August of 2022, Evident claimed that all implementation services were complete; yet, Exceptional was still experiencing significant problems with the EHR system.

(Doc. 20 at 6).

The Court cannot accept the defendants' position.  In the first place, the quoted language does not allege that implementation services *were* complete in August 2022, only that the defendants "claimed" they were complete.  Even if those services were in fact complete at that time, and even if the continuation of problems thereafter negated the plaintiff's assumption that incomplete implementation was the source of the problems, the defendants do not explain how such a state of affairs would, as a matter of law, be so suspicious as to provoke inquiry in a reasonable person.[5]  Perhaps such a demonstration could be made, but the defendants have not attempted to make it.

"A dismissal for failure to state a claim on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred."  *United States ex rel. Hunt v. Cochise Consultancy, Inc.*, 887 F.3d 1081, 1085 (11th Cir. 2018) (internal quotes omitted).  "[W]hen a party discovered or should have discovered fraud is normally a question for the jury."  *Wheeler v. George*, 39 So. 3d 1061, 1082 (Ala. 2009).  The defendants have failed to show that this is the rare case in

---

[5] By way of example only, post-implementation bugs, glitches, and disruptions are not unusual in the tech world, and the Complaint indicates that both the System and the plaintiff's multi-hospital needs were large and complicated.

which the allegations of the Complaint, of themselves, establish that the plaintiff discovered, or should have discovered, the fraud more than two years before filing suit.

### B. Disguised Contract Claim.

"A mere failure to perform a contractual obligation is not a tort." *Gustin v. Vulcan Termite and Pest Control, Inc*., 331 So. 3d 601, 605 (Ala. 2020). Without any analysis of the operative pleading, the defendants posit that the plaintiff's tort claims "are solely related to [their] purported failure to honor the [Contract]" and "are claims of dissatisfaction with [the defendants'] performance under the [Contract], *i.e*. a breach of contract claim." (Doc. 24 at 7). The Court cannot agree.

The Complaint alleges that the defendants made a number of misrepresentations to the plaintiff "with the intent to induce [the plaintiff] to enter into the [Contract]," and that the plaintiff relied on these representations in entering the Contract. (Doc. 20 at 4, 17-18). "Fraud in the inducement consists of one party's misrepresenting a material fact concerning the subject matter of the underlying transaction and the other party's relying on the misrepresentation to his, or her, or its detriment in executing a document or taking a course of action." *Farmers Insurance Exchange v. Morris*, 228 So. 3d 971, 978 (Ala. 2016) (internal quotes omitted). This is precisely what the Complaint alleges, and it sounds in tort. *Id*.

"Alabama courts have consistently held that, where a party fraudulently conceals or misrepresents facts relating to its intention or ability to perform under a contract, a single transaction can support an award of damages for both breach of contract and fraud." *Combined Services, Inc. v. Lynn Electronics Corp*., 888 F.2d 106, 107 (11th Cir. 1989) (internal quotes omitted). Thus, in *Combined Services*, the Eleventh Circuit upheld a judgment awarding damages for both breach of contract and fraud where the defendant contracted to sell eighty cartons of telephone cords to the plaintiff after "willfully misrepresenting that it had the telephone cords in stock and intended to deliver them," when in fact the defendant "entered into the contract knowing that it had no telephone cords to ship." *Id*. at 106-07. In *Sweetwater Investors, LLC v. Sweetwater Apartments*

6

*Loan LLC*, 2010 WL 4904673 (M.D. Ala. 2010), a fraudulent inducement claim withstood a motion to dismiss where the defendant misrepresented that it had full ownership of the loan and loan file and the authority and ability to transfer them to the plaintiff. *Id*. at *5-6. In *Stone v. Koch Farms LLC*, 2013 WL 121477 (N.D. Ala. 2013), Judge Propst quoted Justice Houston for the proposition that fraudulent inducement includes "misrepresentations concerning the goods that the buyer purchases; e.g., a buyer purchases a horse that the seller maintains has two good eyes, and the buyer later discovers that one of the eyes is blind." *Id*. at *2 (quoting *Hunt Petroleum Corp. v. State of Alabama*, 901 So. 2d 1, 10 (Ala. 2004) (Houston, J., concurring specially) (internal quotes omitted)). The plaintiff relies on *Combined Services* and *Sweetwater Investors*, (Doc. 26 at 9, 12), and the defendants themselves injected *Stone*, (Doc. 24 at 7), yet they address none of these passages or rulings.

      The Complaint alleges that the defendants' pre-Contract misrepresentations included, *inter alia*, that the System was: (1) an integrated system allowing cross-access between hospitals and across disciplines; (2) state-of-the-art; (3) user friendly; and (4) free of technical defects. (Doc. 20 at 4-5). These alleged misrepresentations certainly sound like the 21st-century counterpart of Justice Houston's blind horse, and they seem to address facts relating to the defendants' ability to perform under the Contract as per the Eleventh Circuit's summary of Alabama's fraudulent inducement jurisprudence. Perhaps arguments could be made to the contrary, but the defendants have raised none.

      Instead, in their reply brief the defendants insist that the Complaint does not include any claim for fraudulent inducement. (Doc. 30 at 7-8). The argument is untenable; as explained above, Count Five explicitly alleges that the defendant's "false representations and omissions were made *with the intent to induce Exceptional to enter into the Complete Contract*." (Doc. 20 at 17 (emphasis added)). Counts Six and Seven re-allege the same. (*Id*. at 19, 20). The Complaint alleges further that the plaintiff "*entered into the Contract ... in reliance on* [this] myriad of misrepresentations ... about [the] EHR system." (*Id*. at 4). The Complaint patently alleges fraud in the inducement under Counts Five, Six, and Seven.

Ignoring the Complaint's language, the defendants argue that fraud in the inducement and fraudulent non-disclosure "are distinct legal concepts under Alabama law, each with specific elements and requirements." (Doc. 30 at 7). Because the plaintiff "still maintains its count for fraud by non-disclosure," the defendants conclude that the Court "must disregard" the plaintiff's response "because it improperly advances a new argument," (*id.*), by which they presumably mean a new claim for fraudulent inducement.

As noted, Counts Five, Six, and Seven in fact include claims for fraud in the inducement. For the proposition that such a claim is incompatible with a claim of fraud by non-disclosure, the defendants rely on *NTA Graphics South, Inc. v. Axiom Impressions, LLC*, 413 F. Supp. 3d 1164 (N.D. Ala. 2019). That case in fact recognizes that "[f]raudulent inducement is a species of fraudulent misrepresentation or suppression," one confined to the scenario "where a party relies on a false representation or omission made during negotiations in executing an agreement or taking a course of action." *Id*. at 1180. One may therefore potentially pursue claims for fraudulent misrepresentation and/or concealment based on statements and/or silence inducing entry into a contract (*i.e.*, fraudulent inducement), and simultaneously pursue claims for fraudulent misrepresentation and/or concealment based on statements and/or silence that did not induce the plaintiff to enter a contract.[6] To the uncertain extent the defendants intend to suggest that a claim of fraudulent inducement cannot be based on non-disclosure but only on express misrepresentations, their position conflicts with both *NTA Graphics* and *Combined Services*.[7]

---

[6] It remains uncertain whether Counts Five through Seven include any claims of post-execution fraud. The Complaint references post-execution "claims" and "represent[ations]" by the defendants, (Doc. 20 at 6, 8), some of which are referenced in Count Five. (*Id*. at 18). In brief, the plaintiff invokes these allegations as relevant to extending the statute of limitations, (Doc. 26 at 9), but it also identifies them as bases of the fraud claims. (*Id*. at 2, 7, 10). Because the defendants do not address these allegations, neither does the Court.

[7] The defendants do not argue that fraud in the inducement cannot be brought under a claim, like Count Seven, of negligent misrepresentation. The Court has and expresses no view on the matter.

The defendants next argue that the fraud claims are "nothing more than reiterations of [the] contract claim," on the grounds that the contract claim alleges that the defendants "made *representations* ... about the characteristics of the services ... which became part of the basis of the bargain between the Parties." (Doc. 20 at 14 (emphasis added)). The defendants object that using the same representations as a basis for both the contract claim and the fraud claim violates Justice Houston's position that "the fraud[ulent inducement] claim must be based on representations independent from the promises in the contract." (Doc. 30 at 7-8 (quoting *Hunt*, 901 So. 2d at 10 (Houston, J., concurring specially)).

Having been raised initially on reply, this argument comes too late. Even had the argument been timely raised, it is factually incorrect. The quoted material from the Complaint is not found in Count One but in Count Two, for breach of express warranty. Count Two identifies the relevant representations comprising the express warranty as the capabilities set forth in various manuals, (Doc. 20 at 14-15), not the apparently different, pre-contractual representations on which the fraud claims are based. (*Id*. at 4-5, 18).

### C. Duty.

An essential element of a claim for fraud by non-disclosure is "that the defendant has a duty to communicate ... because of a confidential relationship between the parties or because of the circumstances of the case." *Brickhouse Capital, LLC v. Coastal Cryo, LLC*, 393 So. 3d 467, 475 (Ala. 2023). Because it is an element of the claim, the plaintiff is required to plead the existence of a duty to disclose. *E.g., Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1320 (11th Cir. 2006). The defendants argue that the Complaint lacks a sufficiently plausible allegation of such a duty to satisfy Rule 8(a). They argue further that the Complaint does not plead the existence of such a duty with the particularity demanded by Rule 9(b). (Doc. 24 at 9).

Count Six alleges that Evident had a "duty to speak since it was in the position to know about the flaws in its system and the flaws in the system constituted significant danger to patients." (Doc. 20 at 19). The defendants do not explain how their alleged

9

awareness of System flaws placing "patient care ... at risk," (*id*. at 8), posing "significant danger" to patients, fails as a matter of law to implicate "circumstances" capable of supporting a duty to disclose. Indeed, they do not even acknowledge the material quoted in the preceding sentence. (Doc. 24 at 9). As for particularity, the defendants have not attempted to explain how the allegations quoted above, and others in the Complaint addressing the System's flaws, the defendants' awareness of them, and the flaws' adverse impacts on patient care, would fail any such requirement. It is not the office of the Court to construct and support arguments on the defendants' behalf, and the Court declines to do so.

### D. Particularity.

"In alleging fraud ..., a party must state with particularity the circumstances constituting the fraud ...." Fed. R. Civ. P. 9(b). The defendants argue that Counts Five and Seven do "not state one singular misrepresentation with particularity." (Doc. 24 at 8-9). The Court agrees.

> While Rule 9(b) does not abrogate the concept of notice pleading, it plainly requires a complaint to set forth (1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud.

*FindWhat Investor Group v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011).

The Complaint alleges that, "in or around June of 2021," before the Contract was entered, the parties' representatives "had detailed discussions" about what the plaintiff required "and what Evident promised it could provide." The Complaint lists several alleged misrepresentations made during these discussions, but it seems plain that only summary descriptions or general categories are provided, not the actual language, or even a paraphrase, of the false statements. The Complaint identifies no documents in which the representations appeared and, while it identifies Tony Benefiel as a representative of

10

Evident during the discussions, it does not attribute any specific misrepresentation to him. Moreover, the Complaint confirms that unidentified "others" made unidentified representations on which the fraud claims are based, and it identifies only some of the recipients of the various misrepresentations. Other than having been made in or around June 2021, the Complaint gives no clue when, or where, each representation was made. (Doc. 20 at 4-5, 18). The Complaint thus patently fails to satisfy Rule 9(b) as construed by the Eleventh Circuit.

The plaintiff insists that it has "alleged its fraud claims with as much specificity as possible" and that further detail must await discovery. (Doc. 26 at 8). The plaintiff has not explained how its own people, who participated in the discussions and heard and/or read the alleged misrepresentations, could be incapable of supplying the missing information identified in the preceding paragraph.

## CONCLUSION

For the reasons set forth above, the defendants' motion to dismiss Counts Two, Three, Four, and Six is **denied**, and their motion to dismiss Counts Five and Seven is **granted**.

DONE and ORDERED this 2nd day of April, 2025.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE